404 So.2d 1023 (1981)
Mary Elizabeth REYER
v.
HARRISON COUNTY DEPT. OF PUBLIC WELFARE.
No. 52751.
Supreme Court of Mississippi.
September 30, 1981.
Rehearing Denied November 4, 1981.
Cecil Burton Jones, Jr., Stanley L. Taylor, Jr., Biloxi, for appellant.
James E. Welch, Waynesboro, Donald G. Barlow, Barlow & Jones, Joe Gentile, Robert Jenkins, Jackson, for appellee.
Before PATTERSON, C.J. and SUGG and BROOM, JJ.
SUGG, Justice, for the Court:
The Harrison County Department of Public Welfare filed a petition to terminate parental rights under section 93-15-1[1] Mississippi Code Annotated (1972) which follows:
Whenever the parent or parents of a child have abandoned or deserted such *1024 child, or are mentally, morally, or otherwise unfit to rear and train such child, any person, agency or institution may file in the chancery court of the county in which either of the parents reside or can be found, or in the county in which the child is found, a petition to have the parental rights of said parent or parents terminated. Before a petition is filed, authority must be granted by the chancery court or chancellor in vacation.
The parents involved in this case have seven children. Two of the children were placed for adoption a number of years ago and the five remaining children have been placed in foster care by the Harrison County Department of Public Welfare. The five children were adjudicated to be neglected children within the meaning of the Family Court Act of 1964 and custody was awarded to the Harrison County Department of Public Welfare for placement in foster care. Three of the children were placed in foster care in 1970 and two in 1978. All five children remain in foster care at this time.
The petition sought to terminate the parental rights of only four of the children, but not as to the oldest child. After hearing the evidence the chancellor found:
There has been no abandonment, nor has there been a desertion and both of you all have proven that today. But then the statute says, `But if they are mentally, morally or otherwise unfit to rear or train said children then the Court may terminate all parental rights of said parent or parents.' I'm going to grant the Petition to Terminate Parental Rights as prayed for by the Department of Public Welfare.
We are unable to ascertain from the chancellor's finding of fact whether he terminated parental rights because the parents were mentally unfit, morally unfit, or otherwise unfit to rear and train their children.
The proof shows that the mother of the children is severely retarded and the father functions at a higher level in problem solving capacity but below the average range. The clinical psychologist who evaluated the parents stated that the father would have difficulty coping in a regular educational setting but would function more effectively in a slow learning setting or a setting where he was considered educably retarded. The psychologist found the father's best skill was his memory and that he had a good capacity with numbers.
With reference to moral unfitness, no evidence was introduced to show that the parents were morally unfit to rear their children.
The other ground mentioned in section 93-15-1 for terminating parental rights is that the parents "are otherwise unfit to rear and train such child." The parents were divorced before 1978 and the two youngest children were in the custody of the mother. The father provided child support in the amount of $125 every two weeks and was punctual in making these payments. The mother testified: "You can depend on him."
When the first three children were placed in the custody of the Welfare Department, efforts were made by the Department to have the parents attend "Parenting Classes." The evidence shows that the mother was uncooperative, but the father could not attend because he was working regularly each day and no classes were held at a time when he was not working. There was proof that the home was filthy and that the parents did not correct this situation. There was proof also that the parents had not contributed to the support of the children at any time after they were placed in the custody of the Welfare Department; however, no effort was made in any legal proceeding to compel the parents to support their children. At the time of the hearing the mother was unemployed, but the father was employed and earning $154 per week.
If we are to sustain the decree of the chancellor terminating parental rights, it can only be done on the mental unfitness of the parents to rear their children. A strong case was presented that the mother was mentally unfit to rear the children but the proof is not sufficient to show that the father was mentally unfit to rear the children. *1025 The proof shows that the parents visited with the children while in foster care, that both parents love their children, are concerned about their welfare, and both want custody of the children.
Two other aspects of the case deserve comment. The Department seeks to terminate the parental rights as to four children but does not seek to terminate the parental rights as to the oldest child who is about the age of 14 years. The question looms large, why terminate the parental rights as to some of the children but not to all? We see no justifiable reason for this arbitrary position and none was developed in the evidence in this case. Also, there was no proof that the visitation by the parents is detrimental to the best interest of the children, nor was any reason given for terminating the parental rights other than the fact that the children had been in foster care for a long period of time.
We are of the opinion that the proof does not rise to the level that would justify terminating the parental rights under section 93-15-1. We therefore reverse and render.
The constitutionality of section 93-15-1 was raised, but we do not address this question because the statute was repealed in 1980 and a new statute[1] dealing with termination of parental rights was enacted.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Sections 93-15-1 through 93-15-11 were repealed by Chapter 485 Mississippi General Laws of 1980. The new statute appears in the 1980 supplement to the Mississippi Code of 1972 as Sections 93-15-101 through XX-XX-XXX, and sets forth in precise language the grounds for termination of parental rights, and suggests that permanent alternatives should be considered which will end the supervision of children by the Department of Public Welfare.